STRATSO ET AL., APPELLANTS, *v.* SONG, APPELLEE, ET AL.

(No. 83AP-295—Decided May 10, 1984.)

*Murray & Murray Co., L.P.A.,* and *Patrick Murray,* for appellants.

*Bricker & Eckler, Michael J. Renner, Charles H. Walker* and *James S. Monahan,* for appellee.

WHITESIDE, J. Plaintiffs, Frances Stratso and her husband Nicholas Stratso, brought this action against Dr. Won G. Song and St. Anthony Hospital on December 3, 1979, in the Franklin County Court of Common Pleas, alleging medical malpractice arising from the laceration of Frances Stratso's left iliac artery during a lumbar laminectomy performed by Dr. Song at St. Anthony Hospital on January 5, 1979, and from the treatment during and following surgery. Dr. Song settled with plaintiffs and was dismissed as a party-defendant, leaving the hospital as the sole defendant. In October 1980, the case was referred to arbitration pursuant to R.C. 2711.21, which provides for mandatory nonbinding arbitration of medical claims before a three-member arbitration board, and the admissibility of the board's decision at the subsequent trial if the decision is not accepted by all parties.

Hearings were held before the arbitration board on two separate days, and three separate opinions were filed with the trial court on December 8, 1981. The arbitrators, with one dissent, found for plaintiffs on the issue of liability but differed on the amount of damages. The trial court, without hearing, apparently informed counsel that, since there was no majority opinion from the arbitrators, there had been no arbitrators' decision as required by R.C. 2711.21 and that, if the parties would not waive arbitration, a new panel would have to be appointed and the case rearbitrated. The trial court appointed a new chairman of the arbitration board, and the parties each designated an arbitrator, plaintiffs renaming their designee upon the first arbitration board.

Thereafter, the case was set for trial, and defendant hospital moved, on March 16, 1982, that the March 31, 1982 trial date be continued to allow for rearbitration. On March 18, 1982, plaintiffs filed a motion requesting that the trial proceed as scheduled on March 31 and that the original arbitrators' report (at least the liability portion) be admitted into evidence. By entry of continuance dated March 24, 1982, the trial court, in effect, overruled plaintiffs' motion and sustained defendant's motion, stating that: "For the reason that there is not yet an arbitrators' decision in this medical malpractice case, the March 31, 1982, trial date is hereby set aside and will be set as soon after receipt of the arbitrators' decision as practical." A similar entry was also entered on March 31, 1982. Subsequently, an August 24, 1982 entry, waiving the rearbitration of their claim, was entered bearing plaintiffs' attorney's name, but signed by defendant's attorney with an indication of telephone approval; plaintiffs have not contested this entry.

The case proceeded to trial before a jury on January 31, 1983. Plaintiffs' case against defendant hospital was based upon the alleged negligence of the physician anesthesiologist in the operating room and in the recovery room for failing to take immediate measures to correct the hole in Frances Stratso's artery and for the alleged negligence of the head nurse in the recovery room for failing to secure appropriate help when neither the surgeon nor the anesthesiologist responded to Frances Stratso's emergency condition. As a result of the negligence of these hospital personnel, plaintiffs contended

that Frances Stratso suffered protracted hypotension, which caused brain damage, and severe blood loss necessitating massive transfusions, which caused chronic hepatitis. At the close of plaintiffs' case, however, the trial court sustained defendant hospital's motion for a directed verdict on the bases that the evidence failed to establish:

"1. An agency relationship between Allied Anesthesiologists, Inc. and defendant Saint Anthony Hospital, or that any anesthesiologist failed to meet an established standard of care.

"2. That nursing employees failed to meet any established standard of care.

"3. That plaintiff's hepatitis was proximately caused by any hospital negligence.

"4. That plaintiff's organic brain damage, if any, was proximately caused by any hospital negligence."

From the decision of the trial court, plaintiffs now appeal raising five assignments of error, as follows:

"1. The court erred in ruling as a matter of law that the anesthesiologist, who was in charge of patient care in the recovery room, was not the agent of the hospital.

"2. The court erred in granting a directed verdict without hearing all of the evidence offered by the plaintiffs.

"3. The court erred in directing a verdict for the defendant on the grounds that no negligence had been shown.

"4. The court erred in summarily ruling that the arbitration report issued by a duly impaneled arbitration board could not be used in the course of the trial.

"5. The court erred in refusing to allow the plaintiff[s] to call the treating anesthesiologist as on cross-examination in this cause. The court further erred by prohibiting plaintiff's [sic] counsel from confronting the witness with previous inconsistent statements given under oath."

In ruling upon a Civ. R. 50(A) motion for a directed verdict, the trial court may neither consider the weight of the evidence nor the credibility of the witnesses. Rather, if there is substantial evidence to support the claim of the party against whom the motion is made, upon which reasonable minds might reach different conclusions, the motion must be denied. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 284-285 [21 O.O.3d 177]. Had the trial court admitted the arbitrators' report into evidence it would have constituted competent evidence to support a finding of liability against the hospital. Therefore, we first consider plaintiffs' fourth assignment or error, which concerns the trial court's March 24, 1982 "entry of continuance," holding that the opinions filed by the arbitrators on December 8, 1981, did not yet constitute a decision in accordance with the requirements of R.C. 2711.21 and that, therefore, the case should be rearbitrated.

R.C. 2711.21 provides in pertinent part as follows:

"(B) *The arbitration proceedings shall be conducted in accordance with sections 2711.06 to 2711.16 of the Revised Code insofar as they are applicable.* Such proceedings shall be conducted in the county in which the trial is to be held.

"(C) If the decision of the arbitration board is not accepted by all parties thereto, the pleadings shall be amended to aver both the fact that the controversy was submitted to an arbitration board and the decision of the arbitration board. *The decision of the arbitration board, and any dissenting opinion written by any board member, shall be admitted into evidence at trial upon the offer of any party,* if the court conducts a review of the arbitration decision and any other relevant information submitted by the parties and concludes that:

"* * *

"(2) *The decision is in accordance with applicable law;*" (Emphasis added.)

Thus, the central issue is whether the decision of the arbitrators was made in accordance with R.C. 2711.06 to 2711.16, insofar as they are applicable, and R.C. 2711.21, and, if not, whether it was proper to submit the case to rearbitration before a new arbitration board.

R.C. 2711.08 provides that: "The award made in an arbitration proceeding must be in writing and must be signed by a majority of the arbitrators. * * *" Although it is preferable for the arbitration board to render its decision upon a single document and to affix their signatures thereto, defendant hospital's contention, that the three separate opinions filed with the court could not constitute a decision of the board in accordance with such requirement, places form over substance. R.C. 2711.11(C) specifically permits the trial court to modify or correct an award which "is imperfect in matter of form not affecting the merits of the controversy." In any event, it appears that the trial court ignored the arbitration decision and found it a nullity on the basis that the failure of the majority of the arbitrators to agree on the damage issue rendered the separate majority liability decision incomplete and no decision at all, and not on the basis that it failed to comply with R.C. 2711.08.

As R.C. 2711.21(B) expressly provides, R.C. 2711.06 to 2711.16 apply only insofar as they are applicable, some provisions of these sections being clearly inapplicable. However, these sections contemplate that, upon receipt of an arbitration award, the trial court will either confirm, modify, correct or vacate the award depending upon statutory criteria. Here, the trial court expressly did none of these, but the effect of the trial court order was to vacate the award and create a new arbitration panel.

However, R.C. 2711.10 provides that: "If an award is vacated * * * the court may direct a rehearing by the arbitrators." In other words, the statute contemplates that, if there is a basis for vacating the arbitration award, the matter should be resubmitted to the same arbitrators, not to a new board of arbitrators. The only statutory basis for such action of the trial court is R.C. 2711.10(D), which provides that the trial court may vacate an arbitration award if: "The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Although the trial court made no such express finding, this is the import of the order of the trial court, indicating the arbitration award to be insufficient.

No specific issue has been raised with respect to the error of the trial court in failing to resubmit the matter to the original arbitration board as R.C. 2711.10 would require. It does not appear, however, that any motion to vacate, modify or correct the award was made pursuant to R.C. 2711.13, although plaintiffs' motion to admit the award into evidence could be construed as a motion for an order confirming the award pursuant to R.C. 2711.09.

The statutory provisions make several references to the matter submitted to arbitration, which ordinarily is determined by the contract between the parties for arbitration. Here, however, the matter submitted to arbitration is controlled by R.C. 2711.21, which provides that: "* * * [T]he controversy shall be submitted to an arbitration board * * *." R.C. 2711.21(A) does not further define as to what is meant by "the controversy," other than to require that this be accomplished upon the filing "of any medical claim," as defined in R.C. 2305.11(D)(3), which provides in pertinent part: " 'Medical claim' means any claim asserted in any civil action against a physician, podiatrist, or

hospital arising out of the diagnosis, care, or treatment of any person.''

In the broadest sense, the "controversy" in this case has many aspects or could be described as consisting of several controversies, including the agency issue, the negligence issue and the damages issue.

Nevertheless, we conclude that the procedures of R.C. 2711.10 and 2711.11 are only partially applicable to an R.C. 2711.21 arbitration proceeding since R.C. 2711.21(C) requires the trial court to conduct "* * * a review of the arbitration decision and any other relevant information submitted by the parties * * *" and to determine whether: "(1) The findings of fact by the arbitration board were not clearly erroneous; * * * (2) The decision is in accordance with applicable law; * * * (3) The procedures required for conducting the hearing and rendering the decision were followed fairly and properly without prejudice to either party."

The trial court made none of these findings, nor did the parties amend the pleadings to indicate that the decision of the arbitration board was not accepted by all parties. Rather, the trial court in essence vacated the original arbitration report and attempted to appoint a new arbitration board. There is no statutory provision for the appointment of a new arbitration board, the statute contemplating a single board which will arbitrate the matter and render a report, which may or may not be admissible in evidence depending upon the findings of the trial court pursuant to R.C. 2711.21(C).

Disregarding for the moment the matter of form referred to earlier, the majority of the arbitrators did make a report both with respect to the issue of liability and the issue of damages. As to liability, arbitrator Howells stated in his letter-report, apparently submitted sometime prior to the preparation of the report of arbitrator Simmons, that:

"Because of the lack of guideline which the government of the hospital had both the right and the duty to promulgate * * * I find the hospital negligent, the proximate result of which was serious and permanent damages to the Plaintiff." Arbitrator Simmons in his report stated at the outset: "Arbitrator[s] Simmons and Howells find defendant St. Anthony Hospital liable but differ on the award of damages * * *." Arbitrator Simmons further stated:

"Hospitals and their medical professionals must devise guidelines to deal with emergencies that arise when one of their members fails to meet his professional obligations to patients who thereby suffer harm. They cannot stand by and let patients incur even more serious damage when they have the ability to act.

"* * *

"It is, therefore, found that defendant St. Anthony Hospital did not meet the standard of care owed to patients being treated in its institution. The health care and medical professions must provide clear guidelines to its members under what conditions they may breech [sic] professional courtesy of the type displayed here in order to avoid or prevent serious damage to the health of those entrusted to their care. To do less is to breech [sic] the trust placed in them by the community at large that is powerless to treat themselves."

Accordingly, while phrased differently, arbitrators Simmons and Howells agreed upon the issue of defendant hospital's negligence and resultant liability and the basis for that negligence and liability. In addition, there was a majority report with respect to damages, in that the majority of the arbitrators agreed that plaintiffs should be awarded $25,000 in damages from defendant hospital. Arbitrator Simmons limited the award to $25,000. Arbitrator Howells found that plaintiff was entitled

to $25,000 as damages, but dissented from that portion limiting the award to $25,000, finding instead that an additional $145,000 should be awarded, making the total award to plaintiffs $170,000. Accordingly, the trial court should have treated the arbitration award as one finding liability against defendant hospital and finding plaintiffs' damages to be $25,000. The dissent of one of the arbitrators from limiting the award to $25,000 does not detract from either the decision of the majority of the arbitrators on the issue of liability or the decision as to damages in the amount of $25,000. The trial court erred in ignoring the arbitration award, especially in light of the provision of R.C. 2711.11 that: "The order shall modify and correct the award, so as to effect the intent thereof and promote justice between the parties." The defect in the award was of the nature set forth in R.C. 2711.11(C), *supra,* since the award was imperfect in the matter of form, which did not affect the merits of the controversy. The alternative for the trial court was not to vacate the award and appoint a new arbitration board, but, instead, if the trial court felt it, within its discretion, could not correct the award because it was not sufficiently definite to meet the requirements of R.C. 2711.10, then the court should have resubmitted the decision to the arbitration board to correct the form of the decision to make it more definite. An appropriate form for the award would have been for both of the majority of arbitrators to have signed the majority award, coupled with a partial dissent by arbitrator Howells, concurring in the award of $25,000 but dissenting from the limitation of the award to that amount.

Since there was an arbitration award, both as to liability and damages, the trial court should have admitted it into evidence unless the court made one of the findings permitted by R.C.

2711.21(C). The clear import of the statute is that, if such findings are made, the decision of the arbitration board is not admitted into evidence, not that a new arbitration board be appointed to render a decision which can be admitted into evidence in accordance with R.C. 2711.21. In this regard, it is stated in the opinion of *Beatty* v. *Akron City Hospital* (1981), 67 Ohio St. 2d 483, at 490 [21 O.O.3d 302], with respect to submission of arbitration decisions into evidence:

"* * * The submission of such decision only provides additional evidence to be considered by the jury. The arbitration panel does not decide the case. The net effect of the panel's decision is to provide the jury with an additional expert opinion by way of panel decision. In this respect, with appropriate handling of such by the trial court, it should be no different from any other expert testimony received at trial. * * *"

Defendant hospital contends that plaintiffs waived any right to present the arbitration decisions into evidence at trial by the written waiver of arbitration and by a failure to specifically offer the result into evidence during the trial. We find no waiver. The matter was presented to the trial court and rejected prior to trial through the motion of plaintiffs, which stated in pertinent part:

"* * * Plaintiffs further move this Court to permit the introduction of the arbitrator's report. Plaintiffs suggest to the Court that if any portion of the arbitrator's report is in conflict with the applicable law relating to said report, that portion which violates the applicable law should be stricken from the jury's consideration."

The trial court continued the previously scheduled trial and required the parties to submit to a second arbitration before a second arbitration panel. The express waiver of arbitration to which defendant's counsel signed plaintiffs'

counsel's name, with telephone authority, waived only the second arbitration. In other words, the waiver was of further arbitration, not waiver of introduction into evidence of the decision of the first arbitration board. To infer a waiver unless a second effort was made at trial to introduce into evidence the arbitration board's decision would be hypertechnical under the circumstances of this case. The issue had been presented to the trial court, which, rather than making a determination pursuant to R.C. 2711.21(C), in effect, found the arbitration board's decision to be a nullity and ordered a new arbitration board appointed. Further efforts by plaintiffs under these circumstances to introduce the arbitration decision into evidence would be an exercise in futility, the matter having been presented to the trial court and the trial court having made a decision for reasons obviating any necessity of offering the decision into evidence at trial. However, the trial court has not made a determination pursuant to R.C. 2711.21(C) as to whether or not the arbitration decision should be admitted into evidence, which the trial court should make upon remand, preferably before the commencement of a new trial. The fourth assignment of error is well-taken.

By their first assignment of error, plaintiffs assert that the trial court erred in ruling as a matter of law that the anesthesiologists were not agents of the hospital. A hospital which employs a physician to provide anesthesia services to patients of the hospital is liable for the medical negligence of that physician under the doctrine of *respondeat superior*. *Klema* v. *St. Elizabeth's Hospital* (1960), 170 Ohio St. 519 [11 O.O.2d 326], at paragraph two of the syllabus. Defendant hospital contends, and the trial court found, that the anesthesiologists are independent contractors. However, the evidence would permit the jury to find defendant hospital liable for negligence of the anesthesiologists upon either of two principles: (1) agency by estoppel, or (2) existence of a nondelegable duty.

The evidence indicated that the anesthesiologists involved in Frances Stratso's care were employed by Allied Anesthesia Services, Inc., a physician corporation providing one hundred percent anesthesia coverage to defendant hospital pursuant to contract with the hospital. Concerning the relationship between the hospital and the employees of Allied Anesthesia Services, Dr. Hamelberg, Director of Critical Care at St. Anthony, testified that: the hospital provides a job description for the Chief of Anesthesia Services; the Chief of Anesthesia Services is responsible for implementation of the standards of the Joint Commission for the Accreditation of Hospitals as they relate to anesthesia services; the Chief of Anesthesia Services develops policies and procedures for anesthesia services; the other physician anesthesiologists work under the Chief of Anesthesia Services; the Chief of Anesthesia Services is responsible to the Chief of Staff and the administration of St. Anthony Hospital and "reports" to the Director of Critical Care, who is responsible for seeing that the Chief of Anesthesia Services carries out his responsibilities; the hospital also provides a job description for all physician anesthesiologists; the physician anesthesiologists are expected to meet the demands of the surgery schedule at the hospital; the job description requires a physician anesthesiologist to make pre-operative and post-operative rounds and to be present at all times in the operating room; the physician anesthesiologist supervises nurse anesthesiologists; and the physician anesthesiologist is jointly responsible to the Chief of Staff and to the administration of St. Anthony Hospital.

From the evidence it would be reasonable to find that the anesthesiologist

is employed not by the patient, but by St. Anthony Hospital, to provide anesthesia coverage for the hospital, and that the patient has no choice in the selection of the anesthesiologist, who is furnished for surgery by the hospital through the contract with Allied Anesthesia Services. The patient has no opportunity to solicit information about the anesthesiologist's qualifications and reputation as he would in choosing a surgeon or a doctor in private practice but must rely upon the hospital to furnish him anesthesia services. Thus, from the patient's perspective, there is no separateness between the anesthesiologist and the hospital. That this is the situation herein is demonstrated by Mr. Stratso's testimony:

"Q: Now, was the surgery that she was going to undergo, was this jointly planned? Were you in on the planning of the surgery with Frances on the conferences?

"A: Yes.

"Q: Now, you told us that you were aware of the fact that some anesthesiology services were going to be needed, is that correct?

"A: Yes, sir.

"Q: Before yourself or either individually or jointly for your wife, before you retained the services of a doctor, do you normally or customarily check out the doctor?

"A: Yes, sir.

"Q: In this case I want you to assume that an outfit called Allied Anesthesiologists provided anesthesiology services for Frances Stratso during the course of the surgery. Had you ever heard of that group or that corporation before?

"A: No, sir.

"Q: Did you do anything to check out the anesthesiology services that were going to be provided to Frances during the course of this surgery?

"A: No.

"Q: Why not?

"A: Well, I figured with a big hospital like St. Anthony's, they must have reputable anesthesiologists, so I never bothered checking.

"Q: Would you state whether or not you relied upon the St. Anthony Hospital to provide this service for you?

"A: Yes, sir."

Consequently, there is a factual issue as to whether the anesthesiologists were defendant hospital's agents by estoppel created by induced reliance. In the medical-malpractice context, a physician's negligence is imputed to the hospital where the patient relies, to his detriment, upon demonstrable indications that the physician is an employee of the hospital. The California Supreme Court in *Seneris* v. *Haas* (1955), 45 Cal. 2d 811, 832, 291 P. 2d 915, held that evidence that the defendant anesthesiologist worked at one hospital, obtained all of his equipment and drugs from that hospital and was subject to an on-call duty at that hospital was sufficient to establish *prima facie* that the anesthesiologist was an agent of the hospital. See, also, *Mduba* v. *Benedictine Hosp.* (1976), 52 A.D.2d 450, 384 N.Y.Supp. 2d 527; *Mehlman* v. *Powell* (1977), 281 Md. 269, 378 A.2d 1121; *Irving* v. *Doctors Hosp. of Lake Worth, Inc.* (Fla. App. 1982), 415 So. 2d 55; and Annotation (1970), 31 A.L.R. 3d 1114.

The doctrine of agency by estoppel through induced reliance is a recognized principle in Ohio. *Rubbo* v. *Hughes Provision Co.* (1941), 138 Ohio St. 178 [20 O.O. 233], at paragraph one of the syllabus; and *Johnson* v. *Wagner Provision Co.* (1943), 141 Ohio St. 584 [26 O.O. 161], at paragraph four of the syllabus. Defendant hospital, however, contends that the doctrine of agency by estoppel is not applicable with respect to a hospital which contracts with a group of physicians to provide a specialized service to the public at the hospital, relying upon *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242 [56 O.O.2d 146]. We

reject defendant's contention that *Cooper* establishes a different rule of agency by estoppel for hospitals. Rather, the holding in *Cooper* was that there was no showing of proximate cause with respect to the alleged negligence on the part of an emergency-room physician, so that there could be no liability of the hospital predicated upon negligence of such physician, whether or not he was an independent contractor. However, at the conclusion of the opinion, but not established by syllabus rule, Justice Duncan did volunteer a statement that agency by estoppel was not created in that case, but relied upon the rule of *Johnson, supra.* Justice Duncan stated: " * * * Nowhere is 'induced reliance' shown by the appellant * * *." *Cooper, supra,* at 254.

Defendant hospital relies upon the preceding statement of Justice Duncan that: "[T]he practice of medicine by a licensed physician in a hospital is not sufficient to create an agency by estoppel * * *." *Id.*

Even this comment in *Cooper* does not change the principle of agency by estoppel. Rather, the statement merely emphasizes that the fact that a physician has an office at a hospital where he receives and treats patients does not alone make him an agent of the hospital, in the absence of evidence showing induced reliance which must be the predicate of agency by estoppel.

In *Cooper,* the patient went to the doctor's office at the hospital, the emergency room in that instance, and consulted with the physician. Apparently no other evidence was adduced as to the patient's reliance upon the hospital for treatment, as opposed to the emergency-room physician, although the complaint had alleged a representation (*id.* at 246) by the hospital.

Nevertheless, as we have indicated, the statement of Justice Duncan in *Cooper* is probably dicta, inasmuch as the case was decided upon the absence of evidence of proximate cause. Regardless, the only rule of law that can be derived from *Cooper* is that agency by estoppel is ordinarily a factual issue to be proved by evidence of induced reliance. In other words, *Cooper* turned upon lack of evidence to show induced reliance. Here, there is ample evidence of induced reliance and of actual reliance upon the representations by the hospital.

*Rubbo* and *Johnson* were followed by the court of appeals in *Hannola* v. *Lakewood* (1980), 68 Ohio App. 2d 61, to find agency by estoppel with respect to emergency-room service being provided at a full-service hospital. That court distinguished *Cooper, supra,* at pages 69-70, only in a footnote, upon the basis that different evidentiary issues were involved, with a comment that pertinent public policy issues were not considered in *Cooper.* The *Hannola* court also pointed out that the language in *Cooper* is dicta since the primary decision was a lack of evidence of proximate cause. For whatever reason, the Supreme Court did overrule a motion to certify in *Hannola.*

The *Hannola* court made certain pertinent comments at page 65, stating: "* * * [S]ound public policy demands that the full-service hospital not be permitted to contractually insulate itself from liability for acts of medical malpractice committed in its emergency room. First, the emergency room is an integrally related part of the full-service hospital. The hospital may not pretend that this essential element of its public service treatment facilities is a separate entity. Moreover, the nature of the situation when people turn to the hospital and its emergency room facilities for treatment is one fraught with crisis. * * * There is frequently no time to choose. * * * The chances of going elsewhere for treatment are remote. Given the relationship of the emergency room to the full-service hospital and the

crisis circumstances under which people seek emergency treatment, public policy requires that the hospital not be able to artificially screen itself from liability for malpractice in the emergency room."

What the *Hannola* court stated with respect to the emergency room is even more compelling with respect to the services of an anesthesiologist in the operating room. The anesthesia service is somewhat of a joint venture with others involved in the surgery, regardless of whether the anesthesiologist is an independent contractor for some purposes. Dr. Santos, the supervising anesthesiologist during plaintiff Frances Stratso's operation, testified in part: "* * * We have a setup at St. Anthony — we have nurse anesthetists hired by the hospital, and our job is to supervise thèse nurses while giving anesthetic, and it so happens I was one of the supervising anesthesiologists on the case." Dr. Santos further testified that the anesthesiologist is not always in the operating room during surgery but, instead, during the operation, leaves the patient in the care of one or more nurse anesthetists employed by the hospital.

In *Cooper,* the patient personally consulted with the specific doctor involved. The question then became who the patient selected as a physician: the hospital, or the physician group which provided emergency-room services pursuant to contract with the hospital. Here, the patient made no selection; instead, there is evidence that the patient relied upon the hospital to provide all operating-room services, other than surgery, but including the anesthesia. The hospital in turn contracted with the physician group to provide that service (anesthesia) which it, the hospital, had at least impliedly represented it would provide to the patient. Thus, even the existence of an independent-contractor relationship between the hospital and the anesthesiology group does not necessarily relieve the hospital of liability for negligent performance by the alleged independent contractor under the rule of *Richman Brothers Co.* v. *Miller* (1936), 131 Ohio St. 424 [6 O.O. 119], the first paragraph of the syllabus of which reads as follows:

"Where danger to others is likely to attend the doing of certain work unless care is observed, the person having it to do is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants." See, also, *Globe Indemn. Co.* v. *Schmitt* (1944), 142 Ohio St. 595 [27 O.O. 525].

Construing the evidence most strongly in favor of plaintiffs, the evidence was sufficient to permit reasonable minds to conclude that defendant hospital was responsible for any negligence of the anesthesiologist and the nurse anesthetist during or immediately following the operation, under the doctrine of *respondeat superior.* Accordingly, the first assignment of error is well-taken.

By the second assignment of error, plaintiffs contend that the trial court erred in sustaining a motion for a directed verdict when the trial judge did not hear all of the videotape deposition testimony of one of plaintiffs' expert witnesses as presented to the jury, since the trial judge, with consent of counsel, was not present during a portion of the playing of the videotape deposition. The transcript of proceedings does not reflect that any objection was made during trial; however, subsequently, affidavits of counsel were presented indicating that the trial judge did in fact leave the courtroom during the playback of the videotaped deposition of the expert witness. The time to object was when the trial judge left. Notwithstanding the trial court's having ruled upon a motion for a directed verdict without having heard all of the evidence adduced

in support of plaintiffs' case, there can be no prejudicial error since the judgment would be reversed, whether the trial judge was present or absent, if the evidence adduced during that period when construed most strongly in favor of plaintiffs, and coupled with other evidence in the case similarly construed, was sufficient to permit the jury reasonably to find in favor of plaintiffs upon the factual issues. If, on the other hand, the evidence, including that which the trial judge did not hear, was not sufficient to reasonably permit the jury to find in favor of plaintiffs, the verdict should be directed in any event. Unnecessary appeals may be averted by the avoidance of the practice in question; however, the second assignment of error is not well-taken.

By the third assignment of error, plaintiffs contend that the trial court erred in finding that no negligence had been shown. In light of the rulings with respect to the first and fourth assignments of error, this assignment of error also is well-taken. As to negligence of the anesthesiologist, there was expert testimony that a person with extremely low blood pressure, or hypotension, not intentionally induced, is in a nonstable condition, and the anesthesiologist, as well as the surgeon, should be attempting to diagnose and alleviate the problem. Defendant points out that there was no direct testimony as to what actually occurred in the operating room, plaintiffs' witnesses relying upon the hospital charts. However, there was sufficient circumstantial evidence to indicate either that the anesthesiologist negligently failed to investigate and discover the cause of the low blood pressure or negligently failed to take steps to correct that cause, when the evidence is construed most strongly in favor of plaintiffs. The evidence indicates that the operating personnel should have been aware, if they were not, that plaintiff Frances Stratso's drop in blood pressure was caused by blood loss, since she was transfused with three units of blood. Expert testimony indicated this amount of transfused blood indicated a significant blood loss and to be unusual in a lumbar laminectomy. The evidence also indicated that the most obvious cause of such a significant blood loss would be a leak in a major blood vessel. Furthermore, plaintiff Frances Stratso was in no condition to know what was going on in the operating room, this being peculiarly with the knowledge of the operating room personnel, except as reflected in the hospital records, which were introduced into evidence.

There was also evidence of negligence in the standard of care in the recovery room. Defendant contends that the brain damage could have been caused during the second or third operations; however, there is evidence from which it could be found that the second and third operations would have been unnecessary had the first operation been properly performed. While defendant contends that the evidence does not prove that the hepatitis was caused by the greatly increased amount of blood necessary to be transfused, the trial court, in directing the verdict, noted that the evidence indicated the additional transfusions greatly increased the risk of hepatitis.[1]

It is somewhat difficult to relate defendant's brief to the issues raised by the assignments of error, since defendant has chosen to restate the issues and rearrange the order of argument. However, from its brief, we gather that defendant's main contention is that there is insufficient evidence to permit submission of the case to the jury, irrespective of whether the trial court otherwise erred. A review of the tran-

---

[1] See Annotation (1983), 20 A.L.R. 4th 136, relative to liability for injury, including hepatitis, resulting from blood transfusions.

script of proceedings, however, reveals sufficient evidence to permit the jury to find for plaintiffs if that evidence be construed most strongly in favor of plaintiffs, even though there may well be considerable merit to defendant's position when the weight of the evidence is considered.

Accordingly, there was evidence from which the jury could have found defendant hospital negligent and that such negligence proximately caused injury to plaintiff Frances Stratso. Thus, the third assignment of error is well-taken.

Dr. Santos' testimony is the subject of the fifth assignment of error, since the trial court required plaintiffs to make him their witness, even though he was a supervising anesthesiologist during the surgery, and it would be his alleged negligence being asserted by plaintiffs.

The fifth assignment of error similarly is well-taken. As we have noted previously, there was evidence from which it could reasonably be found that defendant hospital is liable under the doctrine of *respondeat superior* for any negligence of the anesthesiologists, including Dr. Santos. The adversity between plaintiffs and Dr. Santos would be apparent in any event since there was admittedly a close relationship between Dr. Santos and defendant hospital. Evid. R. 611(C) provides that: "* * * When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Under the circumstances of this case, Dr. Santos was identified with an adverse party, defendant hospital, whether his relationship was that of agency or independent contractor, and the trial court should have permitted plaintiffs to call him on cross-examination. In addition, Evid. R. 607 provides that a witness may be impeached by any party. The limitation requiring a "showing of surprise and affir-

mative damage" prior to impeachment by means of a prior inconsistent statement does not apply to statements which would be admitted pursuant to Evid. R. 801(D)(1)(a). The fifth assignment of error is well-taken.

For the foregoing reasons, the first, third, fourth and fifth assignments of error are sustained, and the second assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

McCormac, P.J., and Straus-baugh, J., concur.