GRIFFIN, [ADMX.,] APPELLANT, *v.*
MATTHEWS; MIDDLETOWN HOSPITAL
ASSOCIATION, APPELLEE.

(No. CA86-09-127—Decided
May 11, 1987.)

*Donald C. LeRoy,* for appellant.
*Baden, Jones, Scheper & Crehan*
and *Thomas Baden,* for John B. Matthews, M.D.
*Lindhorst & Dreidame, Nancy
Neubauer* and *Mark MacDonald,* for
appellee.

JONES, P.J. The issue for consideration in this appeal is whether the trial court properly granted summary judgment to defendant-appellee, Middletown Hospital Association ("Middletown Hospital"), with respect to the issue of agency by estoppel. Plaintiff-appellant, Patricia Griffin, the administratrix of the estate of Roger Griffin, filed a wrongful death action against Middletown Hospital, John B. Matthews, M.D., Middletown Emergency Room Physicians, Inc. ("MERP"), and several other defendants.

At 11:00 p.m. on December 5, 1982, the Monroe, Ohio, lifesquad transported plaintiff's decedent, who was suffering from pain in his chest and arms, to Middletown Hospital's emergency room. At 1:35 a.m. on December 6, 1982, following an examination by Dr. Matthews, a blood isoenzyme test and an electrocardiogram, Matthews diagnosed decedent's condition as costochondritis, bronchitis and ethanol intoxication. Decedent was then discharged and sent home. Within the hour, the lifesquad returned decedent — by now in full cardiac arrest — to Middletown Hospital where he was pronounced dead at 3:05 a.m. An autopsy attributed decedent's death to a recent myocardial infarction.

MERP and Middletown Hospital had a contractual arrangement under which MERP furnished physicians for the hospital's emergency room department and Middletown Hospital furnished the facilities, equipment, nurses, technicians and administrative support staff. Middletown Hospital retained the right of final approval of all physicians furnished by MERP as well as the right to terminate any doctor Middletown Hospital found unsatisfactory. Matthews was employed by MERP and was one such physician provided to Middletown Hospital under the contract.

Plaintiff eventually dismissed all defendants except Middletown Hospital, MERP and Matthews. Plaintiff settled her claim against MERP and Matthews and they were dismissed as defendants. Plaintiff continued her ac-

tion against Middletown Hospital as the sole remaining defendant.

On April 30, 1986 Middletown Hospital filed a motion for summary judgment, claiming that neither Matthews nor MERP was its agent and that it could not be held accountable for their actions. Plaintiff filed a memorandum in opposition to the motion with a supporting affidavit.

In an opinion dated May 20, 1986, the trial court found that, as a matter of fact, there was no direct negligence by Middletown Hospital or any of its employees. Relying upon the Supreme Court's decision of *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 56 O.O. 2d 146, 272 N.E. 2d 97, the trial court concluded that since there had been no demonstration that plaintiff's decedent relied upon the hospital's reputation for its emergency room facilities, Middletown Hospital could not be held liable for the actions of Matthews or MERP under the theory of agency by estoppel. Judgment was granted in favor of Middletown Hospital and the matter is now before us on plaintiff's timely appeal. Plaintiff's sole assignment of error is that the trial court erred in granting summary judgment to Middletown Hospital.

This case concerns the legal relationship known as agency by estoppel, an agency which occurs when an individual dealing with an agent acting outside the scope of his or her authority reasonably believes the agent's conduct falls within the scope of authority due to conduct by the principal. *Funk* v. *Hancock* (1985), 26 Ohio App. 3d 107, 26 OBR 317, 498 N.E. 2d 490, paragraph four of the syllabus. In such a situation, the principal is estopped from denying that the agent's actions were not within the scope of authority. *Id.* The trial court's decision to grant summary judgment to Middletown Hospital was predicated upon its observation that: "[i]n the matter *sub judice* there is nothing before us in the

motion for summary judgment to indicate there was a 'reliance' upon the hospital." Absent such reliance, the trial court concluded that an agency by estoppel relationship could not exist between Middletown Hospital and Matthews and MERP.

The *Cooper* case involved a child who was hit by a truck while riding his bicycle. The child's mother took him to a hospital emergency room where he was examined by a physician who was an employee of a medical group not under the direct control of the hospital. The doctor sent the child home and within a few hours the child died from cranial swelling caused by a fractured skull. The child's parents subsequently brought suit against the doctor, medical group and the hospital.

The Supreme Court's decision dealt primarily with the question of proximate cause with respect to the alleged negligence on the part of the treating physician for his failure to ascertain the patient's vital signs. Only at the end of its decision did the Supreme Court state that even if the physician or medical group was negligent, such was insufficient to hold the hospital liable under an agency by estoppel theory since the parents failed to demonstrate the induced reliance necessary to establish that relationship. *Cooper, supra,* at 254, 56 O.O. 2d at 152, 272, N.E. 2d at 104. It should be noted, however, that we, in addition to two other appellate courts, have recognized that this statement amounted to nothing more than mere dicta. See *Funk, supra,* at 110-111, 26 OBR at 321, 498 N.E. 2d at 494; *Stratso* v. *Song* (1984), 17 Ohio App. 3d 39, 47, 17 OBR 93, 101, 477 N.E. 2d 1176, 1186; and *Hannola* v. *Lakewood* (1980), 68 Ohio App. 2d 61, 69-70, 22 O.O. 3d 63, 68-69, 426 N.E. 2d 1187, 1192-1193, fn. 2. Even so, courts have still looked to the issue of induced reliance when reviewing summary judgment proceedings as they relate to agency by

estoppel claims involving hospital emergency room facilities. *Funk, supra;* and *Hannola, supra.*

In opposing Middletown Hospital's summary judgment motion, plaintiff offered the affidavit of John Purvis, the director of a Butler County paramedic services corporation. Purvis, a paramedic with over twenty years' experience in providing emergency medical services, stated that he had reviewed the lifesquad's run reports concerning plaintiff's decedent. According to Purvis, Roger Griffin was medically unstable or had the potential to become unstable when the squad unit responded to the Griffin residence. He further stated that the lifesquad was under a duty to transport Griffin to the nearest appropriate hospital having the necessary emergency room facilities and coronary care unit — Middletown Hospital.

Plaintiff submits that the Purvis affidavit raised a genuine issue of whether plaintiff's decedent was induced into relying upon Middletown Hospital's emergency room facilities. While the affidavit of a family member or even one of the squad members who actually transported Griffin to Middletown Hospital would clearly establish a genuine issue of material fact, we hold that the affidavit of an individual, who, although obviously well-qualified as a paramedic specialist, but did not actually participate in transporting plaintiff's decedent, is hardly sufficient to raise a question of induced reliance.

As an alternative to the induced reliance argument, plaintiff also contends that summary judgment was improper since a question of agency by estoppel exists with respect to Middletown Hospital's assumption of a nondelegable duty. As noted, previous cases addressing the agency by estoppel issue involving hospitals and the various services they provide have found a factual question on the agency relationship based upon a demonstration of induced reliance. See *Funk, supra; Stratso, supra;* and *Hannola, supra.* Plaintiff's position is that a hospital should be estopped from denying an agency relationship between itself and physicians or medical services groups under contract with the hospital to provide emergency room services regardless of whether the patient has been induced to rely upon the hospital to provide such services. It is submitted that where the hospital assumes a nondelegable duty, *i.e.*, provides an emergency room facility as part of its full-service care, the hospital is estopped from isolating itself from a physician's negligence, even in the presence of an employer-independent contractor relationship.

In the first paragraph of the syllabus of *Richman Brothers Co.* v. *Miller* (1936), 131 Ohio St. 424, 6 O.O. 119, 3 N.E. 2d 360, the Ohio Supreme Court stated that:

"Where danger to others is likely to attend the doing of certain work unless care is observed, the person having it to do is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants."

Similarly, the Court of Appeals for Cuyahoga County held that:

"By calling itself a 'hospital' and by being a full-service hospital including an emergency room as part of its facilities, an institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. In essence, an agency by estoppel is established by creating an effect: that is, the appearance that the hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. The patient relies upon this as a fact and he believes he is entering a

full-service hospital." *Hannola, supra,* at 64-65, 22 O.O. 3d at 65, 426 N.E. 2d at 1190.

Hospitals do not advertise or otherwise represent that emergency room facilities are those of a particular physicians' group or a medical care group. Instead, hospitals advertise that patients will be served by *their* emergency room facilities and staff. Clearly, one would not think in terms of the "Middletown Emergency Room Physicians, Inc. Emergency Room" during a medical emergency; rather, the patient believes he will be treated in Middletown Hospital's emergency room. *Id.* at 65, 22 O.O. 3d at 65, 426 N.E. 2d at 1190.

In addition, sound public policy considerations require that the full-service hospital be held accountable for emergency room malpractice notwithstanding a patient's lack of actual or induced reliance. Emergency rooms and emergency medical care connote a situation of urgency, one that requires prompt action without the benefit of careful consideration and the prior balancing of alternative choices of action. As Judge Krenzler, speaking for the court in *Hannola, supra,* at 65, 22 O.O. 3d at 65-66, 426 N.E. 2d at 1190, stated:

" * * * the nature of the situation when people turn to the hospital and its emergency room facilities for treatment is one fraught with crisis. People are often highly emotional. There is frequently no time to choose. Indeed, time is of the essence. The chances of going elsewhere for treatment are remote. * * *

"* * * Realistically, a person has no meaningful choice under the circumstances. He needs treatment and will turn to his local hospital to provide it regardless of prior notice that the physicians are independent contractors. * * * "

The nature of an emergency medical situation reveals the inequity of requiring induced reliance on the part of a patient. Naturally, a conscious patient, capable of making a choice, who specifically elects to be taken to a particular hospital's emergency room has aptly demonstrated his reliance upon the hospital and its emergency room facilities. However, the unconscious or comatose patient, unable to express his desire to be taken to a particular hospital, must depend upon others, possibly even total strangers, to decide for him which hospital can promptly provide the necessary emergency care. In the first instance, the patient has shown the "induced reliance" necessary to support an agency by estoppel claim, whereas the second patient cannot establish reliance as easily and may be precluded from proving reliance altogether. In the case of malpractice by an emergency room physician, the first patient would have the foundation upon which to hold the hospital liable under the theory of agency by estoppel whereas the second patient would be barred from such a claim because he could not prove the requisite reliance.

The mere practice of medicine in a hospital by a doctor with staff privileges is not of itself sufficient to create an agency by estoppel and hold the hospital liable. See *Klema* v. *St. Elizabeth's Hosp. of Youngstown* (1960), 170 Ohio St. 519, 11 O.O. 2d 326, 166 N.E. 2d 765; *Hannola, supra;* and *Funk, supra.* However, where the full-service hospital assumes a nondelegable duty such as the operation of an emergency room facility, the hospital cannot contractually insulate itself from liability for acts of medical malpractice committed in its emergency room by entering into a contract with a third party whereby the third party is to operate the emergency room. In such a situation, the party asserting the agency need not prove induced reliance on his or her part in order to establish the agency relationship. See,

also, *Stratso, supra,* at paragraph three of the syllabus:

"A hospital which employs a physician to provide anesthesia services to patients of the hospital is liable for the medical negligence of that physician * * *. The existence of an independent-contractor relationship between the hospital and the anesthesiologist does not necessarily relieve the hospital of liability * * * where there is evidence of estoppel through induced reliance *or of the assumption by the hospital* of a *nondelegable duty.*" (Emphasis added.)

Construing the evidence most strongly in favor of the plaintiff, we find that a genuine issue of material fact exists with respect to whether Middletown Hospital can be held liable for any malpractice committed in its emergency room regarding plaintiff's decedent. Civ. R. 56(C). Accordingly, we find plaintiff's assignment of error to be well-taken and reverse the summary judgment granted below.

The judgment of the trial court is reversed and the cause is remanded.

*Judgment reversed and cause remanded.*

KOEHLER, J., concurs.

HENDRICKSON, J., dissents.