WHITLOW, APPELLANT, *v.* GOOD SAMARITAN HOSPITAL, APPELLEE, ET AL.

(No. CA 10346 — Decided October 20, 1987.)

*Alvarene N. Owens* and *Keith R. Spero,* for appellant.
*Steven Dankof,* for appellee.

FAIN, J. This is an appeal from an entry of judgment sustaining defendant-appellee Good Samaritan Hospital's motion for summary judgment. After reviewing the record, we conclude that the trial court erred in its decision since the evidence submitted by plaintiff-appellant Wilton D. Whitlow was sufficient to raise a genuine issue as to Good Samaritan's liability on a theory of agency by estoppel. Consequently, the decision of the trial

court will be reversed and this cause will be remanded.

I

The parties appear to be in substantial agreement as to the facts which gave rise to this case. On September 29, 1984, Whitlow was taken to Good Samaritan's emergency room after suffering a seizure and a blackout. Whitlow contends that for approximately one year prior to this time, he had suffered between twelve and twenty-five seizures of gradually increasing severity.

It appears that after Whitlow went to Good Samaritan's emergency room, he received treatment and was referred to the hospital's outpatient clinic. On October 1, 1984, Whitlow went to the clinic and was examined by Dr. Dennis Aumentado who prescribed an antiepileptic medication known as Dilantin.[1] In an affidavit filed with the trial court on September 17, 1986, Whitlow stated that after taking the Dilantin, he suffered no further seizures or blackouts.

According to Whitlow, he continued to receive treatment at Good Samaritan's outpatient clinic over the next few weeks and considered himself a patient of the hospital. In an affidavit filed with the trial court, Whitlow stated that after complaining to Dr. Aumentado of a warm sensation and dryness of the eyes, the clinic later called and told him to reduce the dosage of Dilantin from three hundred to two hundred milligrams.

On October 20, 1984, Whitlow was again taken to Good Samaritan's emergency room. According to the history taken at the time, Whitlow was complaining of swelling and burning of the eyes, swelling of the lips and tongue, a rash on his face, chest and back, fever, and a feeling of nausea. Whitlow was admitted to Good Samaritan and was eventually diagnosed as having Stevens-Johnson syndrome.[2]

On September 13, 1985, Whitlow filed suit in the Court of Common Pleas of Montgomery County against Good Samaritan, Dr. Aumentado, Dr. Gilbert Wergowske, Dr. Howard Gross, Dr. Ratnam Oza, three unnamed "John Doe" defendants, and the Parke-Davis division of Warner Lambert & Co., the manufacturer of Dilantin. In the complaint, Whitlow alleged that he had suffered damages as the result of hospital and medical malpractice and breach of warranty on the part of Parke-Davis.

Eventually, all of the defendants except Good Samaritan were dismissed from the action.

On July 31, 1986, Good Samaritan filed a motion for summary judgment, claiming that at all times relevant to the complaint, Dr. Aumentado had not been an employee of Good Samaritan but instead had been an employee of the Wright State University School of Medicine assigned to Good Samaritan's outpatient clinic.[3] Therefore, ac-

---

[1] For information on the pharmacology and effects of Dilantin, see Physician's Desk Reference (41 Ed. 1987) 1484-1486.

[2] Stevens-Johnson syndrome is a condition characterized by the presence of spots, papules, and nodules, usually on the face, neck and limbs. In its most severe form, the covering of the eyeball and the lining of the mouth are also affected. See 3 Schmidt, Attorney's Dictionary of Medicine (1987) S-177. Although the etiology of the condition is unknown, a correlation has been observed between the incidence of Stevens-Johnson syndrome and the administration of certain drugs. Magalini & Scrascia, Dictionary of Medical Syndromes (2 Ed. 1981) 775-776.

[3] In a motion filed May 27, 1986, Dr. Aumentado requested that he be dismissed from the action on the grounds that at the time he rendered treatment to Whitlow, he was an employee of the state of Ohio and

cording to Good Samaritan, since Dr. Aumentado was not under the hospital's control, it could not be held liable for his conduct. In a decision filed January 26, 1987, the trial court held as follows:

"After considering the matter, particularly, in light of this Court having sustained Dr. Dennis Aumentado's motion for summary judgment on the basis that he is an employee of the State of Ohio and not an agent of the Defendant, Good Samaritan Hospital and Health Center, the Court concludes that the Defendant, Good Samaritan Hospital and Health Center's motion for summary judgment is well-taken and should therefore be and the same is SUSTAINED on the ground that there is no genuine dispute as to material facts, and that Defendant Good Samaritan Hospital and Health Center is entitled to judgment as a matter of law.

"The doctrine of agency by estoppel is not applicable in this particular case because this was not a crisis situation justifying the application of that rule. See the excellent opinion of Yeazel, J., in *Patrick Duffley, et al.* v. *Ronald L. Nagy, M.D., et al.,* Case No. 85-1025, the opinion and judgment entry which was filed July 8, 1986."

From this decision, Whitlow appeals.

## II

Whitlow's first assignment of error is as follows:

"The trial court erred in granting defendant/appellee's motion for summary judgment where there was a genuine issue of material fact as to whether plaintiff/appellant was induced by appellee to rely upon the appearance that Dr. Aumentado was an agent or employee of the appellee hospital."

Whitlow contends that even though Dr. Aumentado was not an employee of Good Samaritan, his acts may nonetheless be imputed to the hospital under a theory of agency by estoppel. Agency by estoppel is the equivalent of apparent authority and is based upon the same elements. *Ammerman* v. *Avis Rent A Car System* (1982), 7 Ohio App. 3d 338, 340, 7 OBR 436, 438, 455 N.E. 2d 1041, 1045, citing *Logsdon* v. *ABCO Constr. Co.* (1956), 103 Ohio App. 233, 74 Ohio Law Abs. 467, 3 O.O. 2d 289, 141 N.E. 2d 216. 1 Restatement of the Law 2d, Agency (1958) 578, Section 267, provides as follows:

"One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

In addition, Comment (*a*) to Section 267 states:

"The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. The rule normally applies where

was immune from liability under R.C. 9.86. On June 3, 1986, Whitlow filed a motion to amend his complaint to include Wright State University and Wright State University School of Medicine. On June 4, 1986, Whitlow filed an action in the Ohio Court of Claims against Wright State University, Wright State University School of Medicine, Good Samaritan, Dr. Aumentado, and an additional unnamed doctor. In a decision and order filed August 18, 1986, the common pleas court judge overruled Whitlow's motion to amend and ordered the complaint against Dr. Aumentado dismissed.

the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant. A manifestation of authority constitutes an invitation to deal with such servant and to enter into relations with him which are consistent with the apparent authority."

The doctrine of agency by estoppel is a recognized principle in Ohio. *Stratso* v. *Song* (1984), 17 Ohio App. 3d 39, 46, 17 OBR 93, 100, 477 N.E. 2d 1176, 1186, citing *Rubbo* v. *Hughes Provision Co.* (1941), 138 Ohio St. 178, 20 O.O. 233, 34 N.E. 2d 202, paragraph one of the syllabus, and *Johnson* v. *Wagner Provision Co.* (1943), 141 Ohio St. 584, 26 O.O. 161, 49 N.E. 2d 925, paragraph four of the syllabus. In addition, Ohio courts have applied the doctrine in the context of medical malpractice committed by physicians working in the hospital as independent contractors. See *Hannola* v. *Lakewood* (1980), 68 Ohio App. 2d 61, 22 O.O. 3d 63, 426 N.E. 2d 1187; *Stratso* v. *Song, supra; Funk* v. *Hancock* (1985), 26 Ohio App. 3d 107, 26 OBR 317, 498 N.E. 2d 490; *Griffin* v. *Matthews* (1987), 36 Ohio App. 3d 228, 522 N.E. 2d 1100.

However, according to Good Samaritan, the doctrine of agency by estoppel has no application to the present case since the theory behind the principle is to protect patients such as those in emergency situations who have no reasonable opportunity to select a treating physician. Good Samaritan reasons that since Whitlow had a chance to investigate Dr. Aumentado and decide whether he wished to receive treatment from him, the doctrine of agency by estoppel. is not pertinent. We disagree.

While it is arguable that agency by estoppel should apply with particular force in cases of emergency medical treatment, we find no indication in the cases that application of this doctrine is limited solely to emergency situations. Rather, the essential inquiry in each case has been whether the defendant hospital made representations to the public that physicians working at the hospital were under the hospital's auspices and whether the injured patient was induced to rely upon this apparent relationship. Therefore, whether agency by estoppel applies in a given factual situation turns not on whether the injured patient had an opportunity to investigate his treating physician. Rather, liability will attach under this doctrine when a patient has been induced to rely upon an apparent relationship between physician and hospital and the patient suffers damage as the proximate result of the physician's malpractice.

Good Samaritan also argues that the fact that Dr. Aumentado was practicing in Good Samaritan's outpatient clinic does not in and of itself give rise to an agency by estoppel. In support, Good Samaritan relies upon *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242, 56 O.O. 2d 146, 272 N.E. 2d 97, in which Justice Duncan wrote that "the practice of medicine by a licensed physician in a hospital is not sufficient to create an agency by estoppel * * *." *Id.* at 254, 56 O.O. 2d at 152, 272 N.E. 2d at 104. However, since the issue in *Cooper* was whether the plaintiff in that case had made a sufficient showing of proximate cause to justify submitting that issue to a jury, we believe that any comments by the court regarding agency by estoppel amount to dicta. See *Stratso, supra,* at 47, 17 OBR at 101, 477 N.E. 2d at 1186. Moreover, we think that the court's statement in *Cooper* simply restates the maxim that the appearance of agency by itself is not enough to invoke the doctrine of agency by estoppel; induced *reliance* must also be shown. See

*Goodman* v. *Mercy* (Dec. 12, 1986), Seneca App. No. 13-85-3, unreported.

In the present case, we note that the various affidavits submitted by Whitlow indicate that he believed Good Samaritan to be the best hospital available to him; that he considered Good Samaritan to be a full-service facility capable of treating his condition; that Good Samaritan selected Dr. Aumentado to provide him with treatment; that he was unaware that Dr. Aumentado was an employee of Wright State University; and that he received bills for Dr. Aumentado's service from Good Samaritan. Construing all the evidence in this case most favorably to Whitlow, we believe that there were material issues regarding the appearance of the relationship between Good Samaritan and Dr. Aumentado, Whitlow's perception of that relationship and the reasonableness of that perception. See *Funk* v. *Hancock,* *supra,* at 112, 26 OBR at 322, 498 N.E. 2d at 495. In our opinion, these issues precluded an award of summary judgment. See Civ. R. 56(C).

Whitlow's first assignment of error is sustained.

### III

Whitlow's second assignment of error is as follows:

"The trial court erred in granting defendant/appellee's motion for summary judgment where there was a genuine issue of material fact as to whether defendant/appellee controlled or had the right to control their [*sic*] out-patient clinic and Dr. Aumentado who worked there and where there was a clear issue as to the hospital's independent nondelegable duty to plaintiff/appellant to prevent malpractice in its outpatient clinic to which the hospital emergency room referred plaintiff/appellant."

At oral argument, it became clear that there has been little or no factual development on the issue of the control exercised or exercisable by Good Samaritan over Dr. Aumentado. Accordingly, and in view of the fact that we are reversing the summary judgment by virtue of having sustained Whitlow's first assignment of error, we conclude that it is premature to rule on the issues raised by his second assignment of error.

Whitlow's second assignment of error is overruled at this time, without prejudice.

### IV

Whitlow's first assignment of error having been sustained, the summary judgment rendered in the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

BROGAN and WOLFF, JJ., concur.