FUNK ET AL., APPELLANTS, *v.* HANCOCK; FAYETTE MEMORIAL HOSPITAL, APPELLEE.

(No. CA84-10-012 — Decided July 8, 1985.)

*Pees & Behal* and *Randall W. Pees,* for appellants.

*Randolph C. Wiseman,* for Thomas Hancock, M.D.

*John F. Birath, Jr.,* for appellee Fayette Memorial Hospital.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Fayette County.

On June 6, 1982, plaintiff-appellant, Donald R. Funk, Jr., was brought to the emergency room at defendant-appellee, Fayette County Memorial Hospital, by his mother, plaintiff-appellant Judy Funk, for treatment of an injury to his left forearm. Following a preliminary examination by the emergency room physician, Donald's injury was diagnosed as a fracture of the left forearm. Defendant Dr. Thomas Hancock was thereafter called in for consultation. After examining the injury, Dr. Hancock placed the arm in a cast. No surgical intervention was performed even though there was a puncture wound in the arm; the wound was simply cleaned and the injury was otherwise treated as a simple fracture. Donald was

discharged from the hospital the following day per the instructions of Dr. Hancock.

After being discharged from the hospital, Donald began experiencing discomfort in his left arm, and it was subsequently determined that the arm had become infected in the area of the puncture wound. As a result, a fasciotomy surgery was performed on the arm to relieve swelling and restore normal blood flow. Later, a portion of Donald's left arm was amputated.

On May 4, 1983, Donald's parents, plaintiffs-appellants, Donald R. Funk, Sr. and Judy Funk, filed suit in the Fayette County Court of Common Pleas against Dr. Hancock, Fayette Memorial Hospital and an unnamed "John Doe" defendant. The complaint alleged that the defendants committed medical malpractice as a result of "improper casting of a compound fracture without debridement and appropriate follow-up observation and care." Following discovery proceedings, Fayette Memorial Hospital, on February 8, 1984, filed a motion for summary judgment asserting that the plaintiffs had alleged no independent acts of negligence by the hospital which caused their alleged damages. On April 10, 1984, the hospital's motion was granted by the court below. An entry to this effect was filed on September 21 of the same year, the court further finding its decision to be a final judgment for purposes of appeal.

The first two assignments of error submitted by appellants for our consideration concern whether the trial court's entry granting Fayette Memorial Hospital's motion for summary judgment satisfies the requirements of Civ. R. 56. They read as follows:

Assignment of Error No. 1

"The court erred in rendering summary judgment without a finding that '* * * reasonable minds can come to but one conclusion and that conclusion is adverse to * * * [plaintiffs-appellants]

* * * against whom the motion for summary judgment is made * * *.' Civ. R. 56(C)."

Assignment of Error No. 2

"The court erred in deciding the motion for summary judgment and in rendering summary judgment without 'ascertain[ing] * * * or specifying the facts that are without controversy, including the extent to which the amount of damages or the relief is not in controversy * * *.' [Civ. R. 56(D).]"

In their first claim of error, appellants appear to be contending that a court granting a motion for summary judgment is required to make findings of fact and conclusions of law in support of its decision. This is simply not the law of Ohio. Nowhere in Civ. R. 56, which sets forth the requirements for granting motions for summary judgment, are separate findings of fact and conclusions of law required. Civ. R. 52 states that a party may, within seven days after receipt of notice of a decision tried by a court without a jury, make a written request that the court state its findings of fact separately from its conclusions of law, but specifically states that "[f]indings of fact and conclusions of law required by this rule * * * are unnecessary upon all other motions *including those pursuant to * * * Rule 56.*" (Emphasis added.) Appellants' first assignment of error is therefore without merit.

In their second assignment of error appellants pose a variation on the theme established by their first assignment, asserting that the court below should have made findings as to which facts before it exist without controversy and which facts are still at issue because of the language of Civ. R. 56(D), which reads, in pertinent part, as follows:

"If on motion * * * summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court in deciding the motion, shall examine the evidence or stipulation properly before it, and shall

if practicable, ascertain what material facts exist without controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order on its journal specifying the facts that are without controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. * * *''

It does not appear, however, from the language quoted above that a court granting a partial motion for summary judgment *must* set forth which facts have been determined and which facts remain at issue, for the rule states that this shall be done "if practicable." Whether rendering such findings is "practicable" would certainly be a decision which is in the sole discretion of the trial judge, based on the facts of each particular case. Inasmuch as the hospital's liability is a relatively narrow issue which will not affect Dr. Hancock's liability or any issues connected therewith, we are unwilling to find that the trial court abused its discretion by failing to supplement its judgment entry per Civ. R. 56(D).

We further note that the trial court, in its April 10, 1984 decision which granted the hospital's motion for summary judgment, advised appellants' counsel that if he wished "to have the court prepare findings of fact * * * [and] conclusions of law he may do so, and within fifteen days thereafter each side may submit proposed findings." The record contains no indication that appellants ever attempted to take advantage of the court's offer (which was, as mentioned above, not required by either Civ. R. 56 or Civ. R. 52) by submitting proposed findings. It is therefore strange that appellants are now attempting to find fault with the trial court's failure to make such findings, since the alleged "error" could have been avoided by timely action on the

part of appellants. As a general rule, errors not called to a trial court's attention which could have been corrected by the court will not be considered on appeal. See, *e.g., State* v. *Gordon* (1971), 28 Ohio St. 2d 45 [57 O.O.2d 180], paragraph two of the syllabus; *Oberlin* v. *Friedman* (1965), 5 Ohio St. 2d 1, 6 [34 O.O.2d 1]; *In re Bibb* (1980), 70 Ohio App. 2d 117, 118 [24 O.O.3d 159].

Accordingly, since the trial court did not abuse its discretion by failing to supplement its partial summary judgment entry with findings as to which facts had been determined and which facts remained at issue, and since appellants failed to cause the court below to render such findings when given the opportunity to do so, appellants' second assignment of error is also without merit.

Appellants' third and final assignment of error takes issue with the substantive fundament of the trial court's decision to grant Fayette Memorial Hospital's motion for summary judgment. It reads simply as follows:

"The trial court erred in granting summary judgment for defendant, Fayette Memorial Hospital."

Appellants in essence argue that since the emergency and follow-up care provided to Donald Funk, Jr. was rendered by a staff physician who was "on call" at the hospital emergency room, and since neither the patient nor his parents requested the services of the particular physician and the physician only became involved due to his relationship with the hospital, any negligence on the part of the physician may be imputed to the hospital on the basis of actual agency, joint venture or agency by estoppel.

Joint venture, the second alternative set forth above, requires a contract, express or implied, to carry out a single business adventure for joint profit. *Al Johnson Construction Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 29 [71

O.O.2d 16], paragraph one of the syllabus. The record is void of any evidence tending to show that Dr. Hancock and Fayette Memorial Hospital had, or intended to have, any such agreement. To the contrary, it appears that the hospital and Dr. Hancock (through the professional group to which he belongs) were engaged in separate business endeavors and did not share materials, expertise, profits or losses with one another. See *Kosydar, supra.* Accordingly, appellants' allegation of joint venture provides no basis for overturning the trial court's decision granting the hospital's motion for summary judgment.

The actual agency and agency by estoppel theories advanced by appellants are more promising and merit further discussion. An "agency relationship" is a consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent. See *Haluka* v. *Baker* (1941), 66 Ohio App. 308, 312 [20 O.O. 136]. Agency by estoppel or apparent authority occurs when a person dealing with an agent acting outside the scope of his or her authority reasonably believes the agent's conduct to be within the scope of authority due to conduct by the principal; in this situation, the principal is estopped from denying that the agent's actions were within the scope of authority. See *Cascioli* v. *Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 182, at fn. 4. The agency by estoppel argument appears to have particular application to the case now before us, and we therefore direct our attention fully upon it without discounting the more remote possibility that an actual agency relationship might be proved to exist as between Dr. Hancock and the hospital.

In support of their position that the doctor's liability should be imputed to the hospital, appellants cite *Hannola* v. *Lakewood* (1980), 68 Ohio App. 2d 61 [22 O.O.3d 63]. The hospital in retaliation offers the case of *Cooper* v. *Sisters of Charity* (1971), 27 Ohio St. 2d 242 [56 O.O.2d 146]. We cannot fault the litigants for failing to refer us to relevant authority in support of each position, for these two decisions in themselves comprise the bulk of important reported Ohio case law on the subject.

. *Cooper, supra,* involved a sixteen-year-old boy who had been hit by a truck while riding his bicycle. The child was taken to the emergency room of a Cincinnati hospital by his mother after complaining of a headache and vomiting. He was examined by an emergency room physician who was an employee of a medical group not under the control of the hospital and sent home. The child died within a few hours of the examination as the result of cranial swelling due to a skull fracture. The mother subsequently brought suit against the doctor, the medical group, and the hospital.

The central issue before the Ohio Supreme Court in *Cooper* was whether the treating physician's failure to ascertain the patient's vital signs (*i.e.,* temperature, respiration, pulse and blood pressure) proximately caused the patient's death. The trial court granted the defendants' motion for directed verdict on this issue, finding that the evidence presented by the plaintiff failed to establish the required proximate relationship. The court of appeals and Supreme Court affirmed the decision, the latter holding that the issue of proximate cause was properly withheld from the jury because the plaintiff failed to present "sufficient evidence showing that with proper diagnosis, treatment and surgery, the patient probably would have survived." *Cooper, supra,* syllabus.

In dicta,[1] the court proceeded to address the issue of whether, had the doc-

---

[1] As the holding related does not appear in the syllabus of the decisions, it is therefore dicta. See *Cassidy* v. *Glossip* (1967), 12 Ohio St. 2d 17 [41 O.O.2d 153].

tor's omission been found to be proximately related to his patient's death, the hospital could have been found liable for the negligence of the doctor and/or the medical group. The court found that it could not, observing that the doctor was an employee of the medical group, not the hospital, and was not under the control of the hospital. *Cooper, supra,* at 254. The court further stated that the doctor's practice of medicine in the hospital was not enough to create an agency by estoppel because there was no showing of "induced reliance," a necessary element of such relationship. *Cooper, supra,* at 254, citing *Johnson* v. *Wagner Provision Co.* (1943), 141 Ohio St. 584 [26 O.O. 161], paragraph four of the syllabus.

The facts of *Hannola, supra,* concern a decedent who allegedly died as a result of treatment administered by a doctor working in the emergency room of a city of Lakewood, Ohio hospital. The doctor was an employee of an organization called "West Shore Medical Care Foundation, Inc." which had an arrangement with the hospital whereby the foundation agreed to hire physicians and provide all necessary physician services to the hospital's emergency room. After the plaintiff's death, his executrix brought suit against the doctor, West Shore Medical Care Foundation and the hospital.

The hospital moved for summary judgment, making arguments strongly analogous to those advanced by the hospital in the case at bar, *i.e.,* (1) that any acts of malpractice were committed by independent contractors because the emergency room was operated by West Shore Medical Care Foundation and not by the hospital, (2) that the hospital was not licensed to practice medicine and did not undertake treatment of the plaintiff's decedent, and (3) that the hospital had no right to control the care and treatment provided by the doctor. *Id.* at 62. In opposition to the hospital's motion, plaintiff asserted that a genuine issue of fact existed as to whether the hospital had the right to control the actions of the doctor and the medical foundation, and as to whether the decedent and his wife were induced to rely on the appearance that the doctor was an agent of the hospital. *Id.*

The trial court granted the hospital's motion, but the Cuyahoga County Court of Appeals reversed, holding that an institution purporting to be a full-service hospital is estopped from denying that physicians and other medical personnel working in its emergency room are its agents, "[r]egardless of any contractual arrangements with so-called independent contractors * * *." *Hannola, supra,* at 65-66.[2] The rationale behind the decision was based on public policy: Since the hospital held itself out to the community as being a full-service facility, and the emergency room was an integral part of the hospital, the court felt that it was unfair to permit the hospital to "pretend that this essential element of its public service treatment facilities is a separate entity. * * *" *Hannola, supra,* at 65.

Although the *Cooper* and *Hannola* decisions reach opposite results as to whether the respective hospitals involved should be relieved of further participation in suits against them, both decisions reflect the same underlying philosophy: agency by estoppel is applicable to cases involving physicians practicing in hospital emergency rooms,

___

[2] This statement was somewhat modified in a footnote to the main text of the decision wherein the court stressed that such estoppel only applies to situations where patients are encouraged to rely on the existence of an agency relationship between the hospital and a physician practicing in its emergency room. "Of course," the court stated, "we fully agree that the mere practice of medicine by a licensed physician in a hospital is not sufficient to create an agency by estoppel." *Hannola, supra,* fn. 2, at 70.

and if a hospital's actions are such that emergency room patrons are encouraged to rely on a presumed agency relationship between a treating physician and the hospital, the hospital may in fact be estopped from denying such relationship. See, also, *Stratso v. Song* (1984), 17 Ohio App. 3d 39.

Turning to the record before us, we find that there is evidence pertaining to the issue of agency by estoppel which, if construed in a manner most favorable to appellants, raises an issue of material fact upon which reasonable minds could differ. The record discloses that Judy Funk, Donald Funk, Jr.'s mother, stated in an affidavit that when she took her son to the Fayette County Memorial Hospital emergency room on the date of his injury she "believed, based upon all of the circumstances, that the physician provided [Dr. Hancock] was working for the hospital at their request." The record further indicates that the hospital, not Mrs. Funk or her son, contacted Dr. Hancock and requested that he treat Donald, and that Dr. Hancock had staff privileges at the hospital and was on its board of directors. Certainly this evidence raises sufficient questions about Dr. Hancock's relationship with the hospital, including the Funks' perception of such relationship, to preclude granting the hospital's motion for summary judgment. See Civ. R. 56(C).

Accordingly, appellants' third assignment of error is well-taken.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed and cause remanded.*

KOEHLER, P.J., HENDRICKSON and YOUNG, JJ., concur.

YOUNG, J., of the Court of Common Pleas of Warren County, sitting by assignment in the Twelfth Appellate District.