OPINION
{¶ 1} Appellant, Shalash, Inc., dba Shalash Food Market ("Shalash"), appeals from a judgment of the Franklin County Court of Common Pleas that affirmed an order of appellee, Ohio Liquor Control Commission ("commission"), wherein Shalash's liquor permit was revoked. Because the common pleas court did not abuse its discretion in affirming the commission's order, we affirm.
 {¶ 2} According to stipulated facts, in a February 2001 order, the director of the Ohio Department of Public Safety authorized its agents to investigate Shalash for violations of commission regulations. Subsequently, agents of the Ohio Department of Public Safety and officers from the Cincinnati Division of Police and the United States Department of Agriculture engaged in a joint enforcement effort.
 {¶ 3} On March 7, 2001, Officers Douglas DePodesta, Darris Sneed, and William Hilbert of the Cincinnati Police Department met with a confidential informant to investigate allegations that agents of the permit holder were receiving stolen property. The informant was given two cartons of cigarettes that were valued at $55, a glucose test kit that was valued at $64, and a package of glucose test strips that was valued at $38. Mohammed LNU (last name unknown), a store clerk at Shalash, had requested these items when the informant visited the store on January 29, 2001. Additionally, the informant was given an electronic benefits transfer ("EBT") card in the amount of $324.[1] The informant was electronically wired so that officers could monitor the investigation. Thereafter, the informant entered the store with the ensuing events being electronically monitored, recorded, and videotaped.
 {¶ 4} After the informant entered the store, Anthony Lillard, another store clerk, took the cigarettes, glucose test kit, and glucose test strips, which the informant had brought, to Mohammed. Both Lillard and Mohammed looked at the items and Mohammed asked the informant, "`How much?'" (Enforcement Investigative Report, at 2.) The informant requested $60 for the items and informed Mohammed that he was providing Mohammed with the items that Mohammed had earlier requested. The informant also mentioned "that glucose test strips were worth more than $100."
 {¶ 5} Lillard and Mohammed told the informant that the expiration date of the test strips, which was November 2001, "was not a good date" and therefore the test strips were not as valuable. Lillard then told the informant to get the test strips with 2002 expiration dates. Lillard also stated that the plastic bar codes were ripped from the merchandise, thereby making resale more difficult. The informant stated that the "`plastic had to be removed to avoid being caught stealing.'" (Enforcement Investigative Report, at 2.)
 {¶ 6} Following negotiation, Mohammed agreed to pay $20 for the cigarettes and $10 for the glucose test kit. Mohammed removed $30 from the cash register and paid the informant. Lillard told the informant to give him $5 for his "cut" and took $5 from the informant. Mohammed then gave an additional $1 to the informant for the glucose test strips.
 {¶ 7} The informant then broached the topic of the EBT card to Mohammed and Lillard. Mohammed and Lillard did not want to "do the deal" in the permit holder's store. Lillard then walked outside. When he returned, Lillard was accompanied by a black male who offered to take the informant and Lillard to a supermarket where Lillard could shop with the EBT card and pay the informant for the use of the EBT card. The informant refused this offer. Lillard then instructed the informant to return to the store at night when the brother of Mohammed would "deal with" the card.
 {¶ 8} Thereafter, the informant left the store and met with investigators at a predetermined location. Evidence was then collected and identified.
 {¶ 9} Subsequently, Shalash was cited for allowing improper conduct, namely receiving stolen property, in violation of commission regulations. Later, Shalash was served notice that an administrative hearing would be held to determine whether Shalash's liquor license should be suspended or revoked, or whether a forfeiture should be ordered.
 {¶ 10} On March 12, 2003, the matter was heard before the commission. At the hearing, Shalash denied the alleged violation but stipulated to the enforcement investigative report and the facts contained therein. (Tr. 6.) By order mailed April 22, 2003, the commission revoked Shalash's liquor permit.
 {¶ 11} Pursuant to R.C. 119.12, Shalash appealed from the commission's order to the Franklin Count Court of Common Pleas. The common pleas court granted Shalash's motion to stay execution of the commission's order pending a final determination of Shalash's appeal. On March 18, 2004, the common pleas court affirmed the commission's order of revocation.[2]
 {¶ 12} From the common pleas court's judgment,[3]
Shalash appeals and assigns a single error for our review:
The Franklin County Common Pleas Court erred when it affirmed the liquor control commission and found that the order of the liquor control commission was supported by reliable, probative and substantial evidence.
 {¶ 13} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, 280. The common pleas court's "review of the administrative record is neither a trial de novo
nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Ohio VeterinaryMed. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 14} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio stated:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621.
 {¶ 15} An appellate court does, however, have plenary review of purely legal questions. Chirila v. Ohio State ChiropracticBd. (2001), 145 Ohio App.3d 589, 592, citing Steinfels v. OhioDept. of Commerce, Div. of Securities (1998),129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 16} Pursuant to former Ohio Adm. Code4301:1-1-52(B):[4]
* * * [N]o permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
* * *
(6) Obtain or exert control over property or services of another, with purpose to deprive the owner therefore, without the consent of the owner or person authorized to consent, or by deception, fraud or threat. Nor shall any permit holder, his agent, or employee, use the licensed permit premises to receive, retain, or dispose of property of another, knowing or having reasonable cause to believe such property has been obtained through the commission of a theft offense.
 {¶ 17} The terms "knowingly" and "willfully" are not defined in former Ohio Adm. Code 4301:1-1-52(B). Nor are these terms defined in other relevant administrative regulations or statutory authority. See Ohio Adm. Code 4301:1-1-02 (definitions) ("knowingly" and "willfully" not defined); former R.C.4301.01[5] (definitions) ("knowingly" and "willfully" not defined). However, according to Black's Law Dictionary (8 Ed. 2004) 888, the term "knowing" may be defined as: "1. Having or showing awareness or understanding; well-informed," and "2. Deliberate; conscious." "Willful," on the other hand, is defined as "Voluntary and intentional, but not necessarily malicious." Id. at 1630.
 {¶ 18} Furthermore, the term "employee" is also not defined in former Ohio Adm. Code 4301:1-1-52(B). Neither is this term defined in other relevant administrative regulations or statutory authority. See Ohio Adm. Code 4301:1-1-02 (definitions) ("employee" not defined); former R.C. 4301.01 (definitions) ("employee" not defined). However, according to Black's Law Dictionary, at 564, "employee" may be defined as "A person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."
 {¶ 19} Additionally, the term "agent" is not defined in former Ohio Adm. Code 4301:1-1-52(B). Neither is this term defined in other relevant administrative regulations or statutory authority. See Ohio Adm. Code 4301:1-1-02 (definitions) ("agent" not defined); former R.C. 4301.01 (definitions) ("agent" not defined). However, an "agency relationship" has been defined as "A consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent."Funk v. Hancock (1985), 26 Ohio App.3d 107, 110.
 {¶ 20} Here, according to the stipulated facts, Lillard and Mohammed were store clerks and, according to a sketch of the premises that is in the record, Mohammed was behind the store counter when the informant was in the store. Based upon these facts, we find the common pleas court reasonably could conclude that Lillard and Mohammed were Shalash's employees or agents, or both.
 {¶ 21} According to the stipulated facts, while the informant was in the store with Mohammed and Lillard, he stated that "the plastic had to be removed to avoid being caught stealing." (Enforcement Investigative Report, at 2.) Therefore, based upon this statement, we find both Lillard and Mohammed had reasonable cause to believe that the cigarettes, glucose test kit, and glucose test strips were stolen. Additionally, according to the stipulated facts, notwithstanding this statement, Mohammed and Lillard took possession of these items in exchange for cash, thereby receiving property that they had reasonable cause to believe was stolen.
 {¶ 22} Therefore, based upon these facts, we find the common pleas court reasonably could conclude that: (1) Lillard and Mohammed deliberately, consciously, voluntarily or intentionally allowed a person upon the permit holder's premises to exert control over property, "with purpose to deprive the owner therefor, without the consent of the owner or person authorized to consent" in violation of former Ohio Adm. Code4301:1-1-52(B)(6); and (2) that Mohammed and Lillard "use[d] the licensed permit premises to receive, retain, or dispose of property of another, knowing or having reasonable cause to believe such property [had] been obtained through the commission of a theft offense" in violation of former Ohio Adm. Code4301:1-1-52(B)(6).
 {¶ 23} Furthermore, under former R.C. 4301.25(A)[6] the commission had authority to suspend or revoke a liquor permit for violations of R.C. Chapters 4301 and 4303 or of any other lawful rule of the commission. Therefore, having found that Shalash violated a regulation of the commission, the commission had the authority to revoke Shalh's liquor permit. See, generally, R.C.4301.25(A).
 {¶ 24} Accordingly, based upon the foregoing, Shalash's contention that the common pleas court abused its discretion when it affirmed the commission's revocation order because the commission's order was not supported by reliable, probative, and substantial evidence is unpersuasive. We therefore overrule Shalash's sole assignment of error.
 {¶ 25} For the foregoing reasons, Shalash's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is therefore affirmed.
Judgment affirmed.
Bowman and Klatt, JJ., concur.
[1] See, generally, Ohio Adm. Code 5101:4-1-03(A). Former Ohio Adm. Code 5101:4-1-03(A), effective July 15, 1999, provided that a "[food stamp] allotment may be issued in the form of coupons, check (cash-out), electronic benefit transfer (EBT), or other approved methods."
[2] In its decision time-stamped February 12, 2004, the common pleas court affirmed the commission's order that revoked Shalash's liquor permit. However, in its judgment entry of March 18, 2004, rather than affirm the commission's order of revocation, the common pleas court dismissed the case. In its judgment, the common pleas court stated: "In accordance with the Court's decision of February 11, 2004, this case is hereby DISMISSED." Because the common pleas court's judgment states that it is in accord with the court's earlier decision that affirmed the commission's revocation order, we construe the court's judgment as an affirmance of the commission's order of revocation, rather than as a dismissal of appellant's appeal.
[3] By entry filed October 15, 2003, the common pleas court consolidated the following cases: No. 03CVF-4551, No. 03CVF-4446, and No. 03CVF-6326. However, the caption of the common pleas court's judgment from which Shalash appeals only references case No. 03CVF-4551; therefore, we conclude only the judgment in common pleas case No. 03CVF-4551 is properly before this court in the instant appeal.
[4] Former Ohio Adm. Code 4301:1-1-52 was repealed and another version enacted effective February 2, 2004. See 2003-2004 Ohio Monthly Record 2170.
[5] Since the joint enforcement effort against Shalash in March 2001, R.C. 4301.01 has been amended twice. See Sub.S.B. No. 262, effective April 9, 2001; Sub.H.B. No. 371, effective October 11, 2002.
[6] Since the commission issued its order of revocation against Shalash, Sub.S.B. No. 23 has amended R.C. 4301.25(A), effective April 7, 2004.